The last cases on the docket this morning are 19-4178 and 20-4015. Pegup v. Ute Indian Tribe of the Uintah. Counsel, if you would please prepare to argue and make sure your mics are unmuted. We're ready to hear you, Counsel. Good morning. Ryan Drever-Skrett on behalf of the Appellant Petitioners. May it please the Court. I would like to reserve two minutes. This case involves four tribal elders who were kicked off the only land they've ever known. Fifteen percent of the state of Utah were exercising their rights to access federal courts. There are two main issues on appeal. First is whether the term detention used in the habeas provision of the Indian Civil Rights Act is analogous to the term impustity contained in other habeas statutes, or whether, as the Tribe submits, the Court should insert a duration requirement not found anywhere else in habeas jurisprudence. Second is whether the petitioners have met their exhaustion requirement. As to the first issue, this Court need look no further than dry v. CFR Court of Indian Offenses, which held that the detention language in the ICRA is coextensive with the impustity requirement in 28 U.S.C. section 2241. One second, Counsel. Mr. Heron, I don't know about my colleagues, but at this end, the audio is breaking up. I suspect Counsel does not have adequate bandwidth, but is there anything we can do about that? I'm sorry, Judge. We don't have any control over it on our side other than, Counsel, if you would, just please make sure to enunciate and speak loudly into the mic. Yes, I apologize. Is this better? Much better. Thank you. Thank you. Again, this Court need look no further than dry v. CFR Court of Indian Offenses, which held that the detention language in the Indian Civil Rights Act and the in-custody language in 28 U.S.C. 2241 are coextensive. And in that case, which is the most important in this litigation, the petitioners had been charged with crimes that were released pending trial. The Court then applied the in-custody requirement of the other habeas statutes to the facts of the petitioners in that case were free to come and go. They were nonetheless in custody as that term had been applied in cases interpreting Section 2241. And since then, numerous district courts relying on dry and the reiterations of that holding and other Tenth Circuit cases, Valenzuela and Walton specifically, have applied these statutes interchangeably. This is settled binding Tenth Circuit precedent. And there is no reason for the Court to do anything else than to simply apply the in-custody test to this case as was done in dry. And I think that the discourse decision in Walton v. Tezuki Pueblo is telling. In that case, the petitioner had alleged in his complaint that he had been banished from the tribe's reservation, which turned out after discovery to be wrong. He was actually only banished from a flea market. But in determining whether the Court had jurisdiction to hear the case, the Court noted that dry required the in-custody requirement of the other habeas statutes to be applied. But it held that because the petitioner, quote, had not shown that he is currently prohibited from entering the Pueblo and therefore could not show, quote, suffering from present restraint, unquote, the habeas provision didn't apply. This would comport with a number of habeas statutes applying Section 2241, such as the Second Circus decision in Nowakoski v. New York, holding that whether an individual is in custody is determined by, quote, the nature rather than duration of the restraint. The converse of Walton is true here. The petitioners were and are currently prohibited from entering the reservation. There should have been a straight up application of the in-custody requirement test to this case by the District Court as the Court applied in dry and Walton, but the District Court refused to apply that here. And if it were applied, surely the Court would have found otherwise. As we hypothetically submit in our briefing, had the City of Salt Lake imposed the punishment of a five-year banishment against non-Indians, there's not a court in the nation that wouldn't find petitioners in custody under 2241. The point being is that the length of a petitioner's detention is irrelevant. The fact that in this case Indians are involved should not be dispositive of whether or not their liberty was severely restrained. The tribe, though, submits that this Court should hold as the Ninth Circuit did in Tavares v. Whitehouse, which was that the Tenth Circuit got it wrong in dry. They urged the Court to hold that the, quote, unique legal status of Indian tribes somehow means that the length of detention should be taken into account when determining whether a Native American petitioner is in custody. The problem is that other than citing the cases which simply state the facts of the Second Circuit's decision in Poudrey v. Tonawanda, Band of Seneca Indians, which did happen to involve permanent banishment, they cite no reason for doing so. The petitioners, though, we in fact do want to take a look at the background and considerations of 1303. And when you do so, it becomes clear that the intent of the legislature was to provide a writ of habeas corpus in these exact circumstances. So taking a look at that just briefly, there were some earlier cases that construed Section 1303 to be broader than the other habeas statutes, but then in Santa Clara Pueblo v. Martinez, the U.S. Supreme Court went deep into the intent of the legislature and determined that the balance between individual rights and tribal autonomy required that, although tribal courts are subject to the restrictions of the Indian Civil Rights Act, the remedy to be imposed was very limited. And it was only to be imposed in those places where there were severe restraints on the individual member that were being imposed. In other words, where the traditional requirements of habeas corpus would be triggered. And that's exactly what the Seventh Circuit held in Poudry. And in Dry, this holding of Poudry was adopted by the Tenth Circuit when applied the in-custody requirement of Section 2241, equally in ICRA cases. And this is something that the tribe argues and specifically on page 20, excuse me, 32 of their brief, that this was inappropriate. Instead, the tribe looks to, again, a contradictory Ninth Circuit case, Tavares, which says that Poudry and thus this court's application, excuse me, adoption of it was quote unquote flawed. And also dicta in a Second Circuit case, Shenandoah and an unpublished Tenth Circuit case, Oviet, that did not involve banishment of any duration and simply stated the facts of Poudry and nothing more. Well, counsel, can I get you, let's just assume you're right. And the habeas standard applies here. Can you explain to me why a temporary banishment would meet that standard? Absolutely. The Tenth Circuit abides by a general habeas rule that a restraint is severe and constitutes custody if it's not one shared by the public generally. That's from this court's decision in Dry. And it's also held on multiple occasions that forcing a person to quote, remain in a particular community or under the condition. Well, let me stop you there because this is not, as you know, this is a little different because banishment is suggesting you're not supposed to remain in a community, you remain out of community, but there's no restrictions where you can be, I guess, except for the particular place you cannot be. So can you help me understand why that would be custody? Absolutely. I think that, well, I'd quote the Tenth Circuit's decision in United States versus Swanson, but what was held that folks that are held under conditions that they're not free to come and go and will meets the in custody threshold. And I think that, again, this is 15% of the state of Utah. They're unable to cut freely come and go to or from. And again, it involves the implication of severe restraints on the ability to travel freely. Again, 15% of the state of Utah, they cannot travel to or from. And again, it's not- Can I, let me stop you there then. Can you distinguish this from our cases involving sex offender restrictions that say, well, you can't live in these 10 places, but you can live elsewhere and therefore you're not in custody. Can you specifically turn to those cases and distinguish them? Yes, your honor. I think that the distinction being that this is not a place like a school district or a specific house. I think that that would be a restraint on liberty, but I don't think that it would be a severe restraint. Again, saying that you can't, that you're not allowed to visit the specific home, you're not allowed to be within 30 feet of the school, that's different from being essentially banished from 15% of the state of Utah. And it's different in the specific circumstances involved in Indian cases. I think because this is not just a friend's house. This is the only land that they've ever known. This is the place that they need to go to for cultural and spiritual reasons. This is where there are ties to this land, specifically for our folks that mean more than, much more than, you know, being- Chris, maybe I'm mistaken about this. Are any of the sex offender cases, habeas cases, where the issue of custody was involved, or were they questions of whether this is a criminal punishment as opposed to civil restriction? And again, I'm not aware of specifically which sex offender cases you're referring to. We've talked about banishment in sex offender cases, but I think those were where we were deciding whether it was a criminal punishment. Right, so I think there's, again, two distinctions to be made there. One, whether or not, if it's civil versus criminal, I think banishment specifically is criminal. Since the first case to look at banishment is the Arizona case before Santa Fe, Pueblo. If that's going to be your point, I think the sex offender cases are going to be hard for you to distinguish. That it's a criminal sanction versus a civil sanction? Well, I think what we said is it's not, essentially, it's not a criminal punishment to restrict a sex offender, to prohibit the sex offender from being in certain areas. Right, I think that- Given that, I think you have a significant burden to distinguish that from banishment. Okay, well, I think that what this pertains to more is, as the court held in Poudry, is that you look at the underlying issue. Is this a civil or a criminal punishment? And this- Do you think that's the central issue here? When trying to distinguish the sex offender cases that you're referencing. What I was asking is whether that was even considering the same issue we're considering. Whether something is civil or criminal might be very different from whether there's a restriction on movement or not. And if the habeas standard of custody, which you cited before, is whether your movement is restricted, then your movement may be restricted by a civil punishment, a civil sanction. It's not clear to me that the- Was it the business committee that imposed this? Correct. Sanction, yeah. Was that a criminal proceeding? Well, I think that, yes. I think it would have been a- Does it matter? Excuse me? Does it matter whether it's a criminal proceeding? Habeas is available in civil proceedings as well. Correct, correct. I think that it matters because that goes to the court's analysis in Poudry, which took that into account, whether it was civil versus criminal, just as it pertained to the severeness of the restraint. To your point, I think just looking at the restraint that's placed on them, a simple application of the 2241, again, you're not going to find a case, in my understanding, where someone's precluded from entering 15% of the state of Utah, and that is somehow not a severe restraint on liberty. I think that just a straight up application of section 2241, as paralleled in Poudry, specifically would lead the court to determine that this was a severe restraint, civil or criminal. The second issue, if I can touch on it just really briefly, is exhaustion. Counsel, you asked for time for rebuttal. Yes, Your Honor, but I did. I'm just calling it to your attention. It's up to you. Thank you, Your Honor. And just really briefly, this is not an issue of willful ignorance of the law, as in Valenzuela. The appellees here, including the court itself, via staff, actively took steps to hide the law from the petitioners on multiple occasions. They had applied another ordinance that precluded them from entering the tribal court at all. This is a sort of heads, I win, tails, you lose, hide the ball tactic that the appellants were, excuse me, the appellees were employing to dissuade our folks from being allowed appellate jurisdiction. Thank you. You have eight seconds of rebuttal time, I guess. Sorry. Counsel, we're ready here for the tribes. Thank you, Your Honor. My name is Preston Steve. I represent the Indian tribe of the Uinta Inure Reservation and the other seven appellees in this case. May it please the court. A couple of comments on counsel's argument. There are one reason why we can't apply 28 U.S.C. Section 2241 cases directly to this case is because there is no counterpart, exact counterpart in the banishment in 2241. Counsel, it would be helpful to me to understand the underlying nature of the case that led to the banishment. As I understand it, the Ute tribe received a complaint from around 70 members requesting the banishment, which ultimately led to the banishment. What was the nature of the proceedings that led to that banishment? Judge Hart asked whether it was criminal. I'd like to ask the same question, but slightly broader, and that is for you to describe the nature of those proceedings. Quasi-criminal, civil, what were they? I believe they were civil proceedings. Under civil proceedings leading to banishment, that's a slightly different notion than I would understand. Up in Creed, here near, in the southern part of Colorado, the sheriff used to say that he would impose sentences in misdemeanor cases by banishment from the mineral county, and he'd pick the level of how the duration of that banishment is a criminal penalty, I guess. But in lieu of criminal proceedings, and that sounds to me like something that's what's happened here. So you, okay, you can't come back to this tribe until what? Some X amount of time expires. Well, that's right. And I think whether we characterize this as civil or criminal, the outcome's the same. The problem- Well, under 2241, our court's case law on what constitutes custody pretty well interprets the situation as being analogous to detention under the Civil Rights Act, the Indian Civil Rights Act. And what does the Indian Civil Rights Act describe that nature of that proceeding under the act? It doesn't distinguish between criminal and civil. What it says is, Your Honor, section 1303 is the applicable section of the Civil Rights Act. And it makes habeas relief, and I'll quote here, available to any person in a court of the United States to test the legality of his detention by order of an Indian tribe. And that's what the Indian Civil Rights Act, and specifically that section, tells us. So then habeas is an appropriate remedy to conduct that test for us, correct? It is. It's the only remedy. The courts have made it clear that the only remedy under the Indian Civil Rights Act for this kind of offense is a habeas corpus proceeding. And we certainly do not contest that this court in Dry held that section so the Indian Civil Rights Act as you notice there, Your Honor, uses the term detention. It doesn't use custody. It doesn't use the word custody as section 2241 does, okay? However, this court in Dry said that the detention language in section 1303 is analogous. And I think that the court's choice of that word was important. It's analogous to the in-custody requirement of section 28 U.S.C. 2241. So from our standpoint, the terms custody and detention when used in the banishment cases is pretty much interchangeable. Does that mean, however, that because a person is placed on five years probation by a state or federal court and brings a 2241 case and the five-year probation is found to constitute his being in custody, it does not follow that a five-year banishment imposed by the Ute Indian tribe constitutes his being in custody too? Well, I think you concede that permanent banishment would qualify, correct? This court has never decided that issue, and I think that's important too. But we would concede that what we would concede is that if this were permanent banishment, that the Pudrey case that the appellants rely on exclusively would at least be relevant. You know, it would be on point with that, but it's not. Well, banishing somebody who's 80 years old for a period of 20 years would be tantamount to permanent, wouldn't it? No, Your Honor, I don't think so. It would be a 20-year banishment. If the tribe had said you're permanently banished, as the court did as the case was in Pudrey, it would have— this would have been a different picture. What's the dividing line, Nod? 80 years, would that be banishment? Permanent, equivalent? I would say that permanent ban— that's not our case. I mean, I think this would be quite a different case if it were permanent. The point is— Well, I'm just trying to test the point at which to answer Judge— not to answer, but to explore Judge Ide's questions. At what point of the continuum does it cross the line from permissible to impermissible? Permanent, we know, is impermissible. You're saying 10 years is not. What is? The continuum, when does it— when does it cross the line? Well, I can't point to a bright line and say actually years would cross that line. However, what I can tell you is that we're only dealing with a five-year banishment here. And in the Taveras case that this court relied upon in Oviatt, there was a 10-year banishment. And the court in that— in the Taveras case found that that was not a sufficiently harmful punishment to put the people in custody for purposes of Section 1303. Is that Rimbert or which case? That is— the case I'm talking about is Taveras versus White House. Well, that's the 10th Circuit case, isn't it? That's the 9th Circuit. Yes, that's right, Your Honor. The 10th Circuit case— We had relied on it in our circuit. We had relied on Taveras. What's the case that we relied on Taveras? Oviatt versus Reynolds. All right. So are you saying then that that case is dispositive? Oviatt's dispositive of the questions here? The court dealt with exactly the same issue in Oviatt that it's dealing with today. And that's the question is, does a permanent— does a temporary banishment constitute being in custody for purposes of the Indian Civil Rights Act? Well, what's temporary? We're back to what's temporary, right? Well— May I pursue some questions on this? Yeah, please. Taveras is a questionable authority because it rejected the 10th Circuit equation of custody with detention. So they start out by saying, we got it wrong. The 10th Circuit got it wrong. So I don't see how we can rely on Taveras as telling us what detention means when it rejected the 10th Circuit conclusion that detention under ICRA is the equivalent of— is at least analogous to custody under 2241. A couple of points, Your Honor. Taveras didn't reject the 10th Circuit's point of view. I know that counsel has referred us to a footnote and— if we're making his argument. And in that footnote, there's no reference to the 10th Circuit there. It's a— it's a rejection of PUDRE. And this court has never adopted the PUDRE standard. The second point is that this court did rely on Taveras in the Oviatt case. Let me ask you before we tell us more about Oviatt. But in the habeas cases, is there any case you're aware of where something is custody if it's— if it has some temporal extent, if it's long enough, but not custody if it's shorter? I'm not aware of any where we say, oh, that was— you were put in a mental institution for just the weekend. So that's not custody. It has to be a longer period of time. I'm not aware of any habeas case that makes a distinction on that ground. Or am I missing something? Not that I know of, Your Honor, but that's why I think that these— that those cases are not analogous to what we have before the court today. What we have before the court today is a question of whether a temporary banishment, a five-year banishment, is—constitutes being in custody. And every court that's considered that says no. There's not the— Well, that wasn't the issue before. They were just pointing out that Poudry was a permanent case. I don't—I think the number of cases that have specifically addressed a temporary banishment is quite limited. But you're not really responding to me. You say, well, yes, in habeas cases, the length of time is irrelevant. But that's why this case is different. But why should it be different? Why should there be a distinction? It's what Judge Lucero was pursuing. At what point do you draw the line when, in fact, the habeas cases never draw such a line, as far as I'm aware? Why should we draw a line here when we—when the analogous habeas situation never draws a line? A couple of points, Your Honor. The—first of all, the— the duration is relevant in these cases. I mean, I—not to differ with you, Your Honor, but this issue— Can you please differ? No, it's—I'll differ. I'll differ away. The—this issue has been considered, specifically in the Taveras case we talk about. It's also—I keep coming back to the Oviatt case, but that was decided on the same facts, essentially, two years ago by this court. And the court said that— let me give you some language. That's an unpublished opinion, right? That's right. We offered it as persuasive authority on the—our thinking was that nothing could be more persuasive than the decision of this very court on the same issue a couple of years ago. And the—in that case, the court said, and I'll quote here, a tribal member is considered detained only when permanently banished from the tribe, close quote. And it cited Shenandoah for that. So—and the Taveras case was a straightforward, temporary banishment case. That's why I thought, as I said, this is not—there's not a complete and perfect analogy between these. The court says that they are analogous, but it hasn't said that they are identical, the section of the Indian Civil Rights Act and the 2241 cases. Harris, further? Judge Iyad? I'm good. Okay, good. Thank you, counsel. Your time has expired. We appreciate the argument. And you went over 34 seconds. Let's extend a minute and a half to counsel for rebuttal, if your panel is okay with that. Okay. Counsel, we're ready to hear from you. Thank you, Your Honor. Actually, I wanted to just reiterate the point that I think Judge Schertz and Judge Yudhisthira just made. There is no continuum. Habeas cases look to the nature rather than the duration of the detention. I think it's been clear specifically in the Ninth Circuit, the case Bell v. City of Denver, 936 F. 2nd 582, specifically held that you look at the date that the habeas petition is filed. That's when it's determined whether or not the petitioner is in custody. End of question. There's no need to look at the duration. Are you making a broad challenge to the practice of banishment by the tribes totally? Our argument is specifically in this case. I think that in this case... You're on the opposite side of my continuum question. If temporary banishment is okay, but you're going to define that as something more than a day, then it seems to me you're basically arguing for a case from our circuit that outlaws or declares unconstitutional the practice of banishment. Oh, that's not at all our argument, Your Honor. Our argument is banishment is detention, which is jurisdiction under the Indian Civil Rights Act. The determination to be made whether or not they were given due process under the Indian Civil Rights Act would be the answer that the court below would need to make. We're just trying to get up to the jurisdictional threshold, which is, are they detained? Yes. Then move on to the underlying questions in our complaint, which have to do with, were they given due process? Was the Indian Civil Rights Act, the substantive portions of the Indian Civil Rights Act, were they violated? I think that's a question of fact. We're just trying to get over the jurisdictional threshold. Were they detained? Yes, they were. All right. Thank you, counsel. We understand the arguments that counsel are excused.